[No. 24368. Department Two. February 2, 1933.]

The State of Washington, *Appellant*, v. The City of Olympia *et al., Respondents*.[1]

*John H. Dunbar, Attorney General,* and *Lester T. Parker, Assistant,* for appellant.

*George F. Yantis* and *H. C. Brodie,* for respondents.

Main, J.—The state, as plaintiff, claiming to have fully paid a local improvement assessment upon tide lands owned by it within the corporate limits of the defendant city, brought this action to have the lands declared free and clear of any incumbrance by reason of the lien of the assessment. The trial resulted in a judgment in part favorable to the state and in part against its contention, and it appeals from the portion of the judgment which was adverse to it.

The facts are not in dispute, and may be stated as follows: The state owns certain tide lands lying within the corporate limits of the city of Olympia. The city created a local improvement district for the purpose of improving a certain street therein. The tide lands

[1]Reported in 18 P. (2d) 848.

of the state were included within the boundaries of this district, and an assessment was made against such lands, the total amount of which was $2,952.10. The assessments were regularly certified to the state commissioner of public lands by the city clerk, and by him certified to the state auditor. At the legislative session for 1927, an appropriation was made to pay the assessment, together with interest thereon at six per cent per annum to April 1, 1927. The city clerk-treasurer applied the assessment upon the lands mentioned and charged the state with interest at the rate of six per cent per annum from April 1, 1927, to February 9, 1928, which was the due date of the bonds issued by the district. By this procedure there was left a small balance due upon each of the lots.

The question is whether the city, through its officer, had the right to charge the state with interest upon its assessment subsequent to April 1, 1927, the full amount of the assessment and the interest thereon having on that date been paid. If the city was entitled to make this charge, the right to do so must be found in the statutes. An assessment by a city for local improvements upon lands owned by the state cannot be made without legislative authority. *Spokane v. Security Savings Society,* 46 Wash. 150, 89 Pac. 466.

In 1919 (Laws of 1919, chapter 164, p. 479), the legislature passed an act authorizing the assessment for local improvements of lands owned by the state and situated within the limits of an incorporated city.

Section 1 of this act (Rem. Rev. Stat., § 8125) provides that all lands, including tide lands, held or owned by the state, situated within the limits of any incorporated city, may be assessed and charged for the cost of local improvements specially benefiting such lands.

Section 2 provides that in all local improvement as-

sessment districts in any incorporated city, property in such district held or owned by the state

". . . shall be assessed and charged for its proportion of the cost of such local improvements in the same manner as other property in such district, it being the intention of this act that the state shall bear its just and equitable proportion of the cost of local improvements specially benefiting state lands. . . ." Rem. Rev. Stat., § 8126.

Section 4 (Rem. Rev. Stat., § 8128) provides that notice of the intention to make a local improvement, together with an estimate of the amount to be charged to each lot, tract or parcel of land, shall be forwarded by registered mail to the state commissioner of public lands, and that the assessment for local improvements may be made upon state lands providing written consent is given by the commissioner of public lands to the making of the improvement.

Section 5 (Rem. Rev. Stat., § 8129) provides that, upon the approval and confirmation of the assessment roll for any local improvement ordered by the proper authorities of any incorporated city, such city shall certify and forward to the commissioner of public lands a statement of all the lots and parcels of land held or owned by the state and charged on such assessment roll for the cost of such improvement, separately describing each such lot or parcel of land, with the amount of the local assessment charged against it. The commissioner of public lands shall thereupon charge against each lot or parcel of land owned by the state the amount of the local assessment so certified and shall then certify the statement to the state auditor, and the state auditor,

". . . at the next session of the legislature, shall certify to the legislature the amount of all local improvement assessments charged against such lands of

the state, and the legislature shall provide for the payment of the same, with interest, by appropriation out of the general fund of the state; . . ."

and provided further

". . . that no penalty shall be provided or enforced against the state, and no interest on the assessment levied to pay for said improvement greater than six per cent (6%) per annum shall be taxed to, or allowed by, the state for or on account of making such improvement."

Rem. Rev. Stat., § 9376, provides that

"Any city or town shall prescribe by ordinance within what time such assessments [local improvement], or installments thereof, shall be paid; and shall provide for the payment and collection of interest thereon, at a rate not to exceed eight per cent per annum. Assessments or installments thereof, when delinquent, in addition to such interest shall bear such penalty not less than five per cent as shall be by general ordinance prescribed. Interest and penalty shall be included in, and shall be a part of, the assessment lien . . ."

Rem. Rev. Stat., § 9407, provides that

"The city or town treasurer shall pay the interest on the bonds authorized to be issued by this act [local improvement bonds] out of the respective local improvement funds from which they are payable;"

and that,

"Whenever there shall be sufficient money in any local improvement fund against which bonds have been issued under the provisions of this act, over and above sufficient for the payment of interest on all unpaid bonds, to pay the principal of one or more bonds, the treasurer shall call in and pay such bonds. . . ."

We find nothing in any of the statutory provisions above referred to which expressly authorizes a city to charge the state with interest upon a local improvement assessment which has been paid in full, to-

gether with the interest to the date of the payment, subsequent to that time and prior to the next due date of the bonds. Neither is there any language used which, by necessary implication, gives the city that right.

Section 5 of the act of 1919 (Rem. Rev. Stat., § 8129) sets out the procedure by which local improvements upon state land are to be paid, and would appear to contemplate that the legislature would, after the amount had been certified to the state auditor, make the necessary appropriation, together with interest thereon at six per cent up to the time of the payment. The statute says the "legislature shall provide for the payment of the same with interest by appropriation out of the general fund of the state," and a later clause in the section expressly provides that the state shall not be charged with the penalty, and shall not be required to pay a greater rate of interest than six per cent per annum.

If there is any authority for what the city is seeking to do, it must be found in § 2 of chapter 164 of the laws of 1919, p. 479 (Rem. Rev. Stat., § 8126). It is true that that section provides that the state shall be assessed and charged for its proportion of the cost of local improvements

" . . . in the same manner as other property in such district, it being the intention of this act that the state shall bear its just and equitable proportion of the cost of local improvements specially benefiting state lands."

This section, by its language, refers to the cost of local improvements, and makes the declaration that the state shall bear its just and equitable proportion thereof. But this falls short of authorizing a city to charge interest as against the state after the latter has paid the assessment in full, together with the interest thereon up to the time of payment. The provision in

§ 5, to the effect that the state shall not be charged interest at a greater rate than six per cent per annum, would seem to negative the thought that the state could be charged interest after it had actually paid the assessment to the city.

Under the statutes above mentioned, the city fixed the due dates of the assessment, as well as the due dates of the bonds, and when the state pays the full amount of its assessment for the improvement, together with interest at six per cent up to the date of the payment, the city cannot exact a further payment of interest awaiting the due date of the bonds. If this could be done, it would be, in effect, requiring the state to pay interest at a greater rate than six per cent per annum, the limit expressly fixed in the statute. The state, by the payment made of principal and interest April 1, 1927, fully satisfied its obligation, and was entitled to have its tide lands declared free and clear of any incumbrances by reason of the lien of the assessment.

That portion of the judgment appealed from will be reversed, and the cause remanded with direction to the superior court to enter a judgment as herein indicated.

BEALS, C. J., TOLMAN, and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—The holding of the majority opinion is that the state may pay the amount of a local improvement assessment charged against it, at any time with interest to that date, and not pay the interest accruing to the next bond due date. This is an advantage that other persons or corporations owning lands in the same district do not have. Section 2 of chapter 164, Laws of 1919, p. 479, which is the act pertaining to "local assessments against state lands," provides that the lands of the state shall be charged

600

for its proportion of the cost of such local improvement *in the same manner* as other property in such district, *it being the intention of the act* that the state shall bear its *just and equitable proportion* of the cost of such local improvements specially benefiting state lands. Rem. Rev. Stat., § 8126. The construction placed on this section by the majority opinion defeats the very purpose and spirit of the act, because the result is to cast upon other persons in the district the burden of meeting and paying the deficit created by the exemption allowed to the state.

It will not do to say that the exaction of continued interest to the bond due date amounts to a penalty which is forbidden by § 5 of the act. Rem. Rev. Stat., § 9376, in force at the time of the enactment of the 1919 act, provided that delinquent assessments should bear, in addition to the prescribed interest, a penalty of not less than five per cent. When the legislature passed the 1919 act prescribing that no penalty should be enforced against the state, it obviously had reference to the penalty exacted for delinquencies. The city in this case is not attempting to exact a penalty for delinquency, but is merely seeking to charge interest upon the assessment up to the time of the next bond due date, a liability which the city has assumed in the issuance of its bonds, and which, in the very nature of things, it must apportion among those who are benefited by the improvement and who therefore must pay the cost thereof.

I therefore dissent from the opinion of the majority.

ON REHEARING.

[*En Banc.* June 3, 1933.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.