[No. 27721.   Department One.   May 20, 1940.]

HOME OWNERS' LOAN CORPORATION, *Appellant,* v. THE CITY OF TACOMA, *Respondent.*[1]

[1]Reported in 102 P. (2d) 832.

*Tom S. Patterson, Russell F. Stark,* and *Clifford M. Langhorne,* for appellant.

*Howard Carothers, Clarence M. Boyle,* and *George F. Abel,* for respondent.

SIMPSON, J.—This action was brought by plaintiff to collect from defendant a total of $2,248.85 paid to it by plaintiff under protest in satisfaction of defendant's demands for payment of delinquent water and light charges for past services to residence properties now owned by plaintiff and located in the city of Tacoma.

Trial was had to the court sitting without a jury. The court rendered judgment in favor of defendant, except as to an amount conceded to have been an overcharge. Plaintiff appeals.

The undisputed facts are these: Between November 6, 1933, and June 20, 1936, appellant made mortgage loans to various persons owning residence properties in the city of Tacoma. Thereafter, appellant acquired title to the properties either by foreclosure or by deed in satisfaction of the mortgages. Respondent owns and operates its own water works and the electric light and power plants and has a monopoly in the furnishing of water and electric light and power services within the limits of the city.

Respondent asserted its right to collect from appellant in all cases involved herein the balance due it as of June 7, 1933, for water or electrical services rendered by it to each of the properties prior to that date. Appellant, realizing it was not possible to sell or rent its properties without making available the water and light services rendered, paid the amounts demanded by the city and sought reimbursement in this action.

In the case of each property involved, respondent, prior to appellant's acquisition of title and right to possession, exercised its privilege to discontinue its ser-

vices at least more than once, and in most cases it was exercised many times. In each instance, however, the services were resumed without a demand or insistence on the part of respondent that the balance owing as of June 7, 1933, first be paid in full.

Respondent bases its rights upon the provisions of chapter 161, §§ 1 and 2, Laws of 1909, p. 617, Rem. Rev. Stat., §§ 9471 and 9472, as amended by chapter 135, Laws of 1933, p. 473, Rem. Rev. Stat. (Sup.), § 9471 [P. C. § 1225].

The original sections read as follows:

§ 9471. "Liens for unpaid charges. Cities owning their own waterworks, electric light or power plants, are hereby granted a lien for delinquent and unpaid charges for water or electric light or power, against the premises to which the same has been furnished."

§ 9472. "Enforcement of lien. Said lien may be enforced by cities only by cutting off water or electric light or power against the premises to which the same has been furnished, after the charges become delinquent and unpaid, *until such charges are paid.* In the event of a disputed account, and tender by the owner of the premises of the amount claimed by him to be due prior to the city discontinuing such a service, the right to so refuse service to any premises shall not accrue until suit has been entered by the city, and judgment entered in such case." (Italics ours.)

June 7, 1933, the amendment of that year became effective and reads as follows:

"Liens for unpaid charges. Cities owning their own waterworks, electric light or power plants, are hereby granted a lien for delinquent and unpaid charges for water or electric light or power, against the premises to which the same has been furnished: *Provided,* That the owner, or the owner of a delinquent mortgage on, of said premises may give written notice to the superintendent or other head of such works or plants to cut-off service to said premises, and from and after the giving of such notice and the payment or tender of the

then delinquent and unpaid charges against such premises for such service and the cut-off charge, the city shall have no lien on the premises for charges for such services thereafter furnished, nor shall the owner, or the owner of a delinquent mortgage on, be held for the payment thereof: *Provided further,* That such liens shall not be for more than four months' charges due or to become due, nor for any charges which have been due for more than four months." Rem. Rev. Stat. (Sup.), § 9471.

Appellant contends that the charges which it was compelled to pay in order to secure the light and water services to its properties, were barred by the statute of limitations; that the statutory right of cut-off could be exercised by respondent, but that respondent by voluntarily resuming its services, without requiring payment for delinquencies antedating June 7, 1933, waived its right to insist, at a later date, upon payment by appellant.

The court determined that the statutes of limitation had no application to the right of respondent to refuse its services of light and water in order to enforce the collection of those delinquent accounts, and that respondent was not guilty of laches in any respect.

The first question presented is whether the statute of limitations applies to the so-called lien given to the city by §§ 9471 and 9472, *supra.*

These sections of the statute have been considered by this court in *McCormacks, Inc. v. Tacoma,* 170 Wash. 103, 15 P. (2d) 688; *Metropolitan Life Ins. Co. v. Hansen,* 179 Wash. 537, 38 P. (2d) 387; and *Moran v. Seattle,* 179 Wash. 555, 38 P. (2d) 391. In each of those cases, we upheld the right of a city to enforce its right to suspend service of water and light pending the payment of delinquent charges.

The amendment of 1933 does not have a retroactive effect, in that it does not destroy the rights the

city had prior to its effective date. *Moran v. Seattle, supra.*

■ Our statute of limitations limits the scope of its application by stating that:

"Actions can only be commenced within the periods herein prescribed after the cause of action shall have accrued, except when in special cases a different limitation is prescribed by statute; . . ." Rem. Rev. Stat., § 155 [P. C. § 8160].

In *Port Townsend v. Eisenbeis,* 28 Wash. 533, 68 Pac. 1045, this court held that a tax lien created by a city charter was not subject to the statute of limitations. The charter provision under consideration provided:

" 'Whenever any general or special tax has been levied as provided and authorized in chapter two of this act, the same shall have the effect of a judgment against the person, and every lien created by this act has the force and effect of an execution duly levied against all property of the person assessed; the judgment is not satisfied, nor the lien removed until the taxes are paid, and every tax due upon real property is a lien against the property assessed; and every tax due upon improvements upon real estate assessed to other than the owner of the real estate is a lien upon the land and improvements, and every part thereof shall bear interest at the legal rate from the time the same is delinquent until paid or collected.' "

In *Childs v. Smith,* 51 Wash. 457, 99 Pac. 304, 130 Am. St. 1107, it was decided that the statute of limitations did not apply to the equitable lien of a mortgagee for reimbursement of payment for general taxes paid by him in good faith; since, under the provisions of Rem. Rev. Stat., § 11265, the tax lien of the county and state was not subject to the statute of limitations.

Rem. Rev. Stat., §§ 9244 and 9261 [P. C. §§ 7574, 7590a], state that the liens created by the judgment confirming assessments levied by a city in eminent

domain proceedings shall remain such until the judgment and assessments shall have been paid.

In construing these sections, we held in. *State v. Seattle,* 138 Wash. 449, 244 Pac. 688, that the liens were perpetual and were not subject to the statute of limitations.

Collection of service charges is necessary to the maintenance of the water and electrical service provided by respondent, and it is quite evident that the legislature decided the method of cut-off and refusal to resume service to be most effective in maintaining these services.

Applying the same reasoning to the statutes under consideration which this court applied to the ones interpreted by the court in the cases just cited, we conclude that the statute of limitations does not apply in the instant case.

In passing the acts under consideration, the legislature plainly indicated its intention of allowing the city to cut off the supply of water and light to those persons who did not pay the charges therefor, and gave the city the further right to refuse a resumption of service until the delinquent charges were paid.

Appellant's remaining contentions amount to a claim of estoppel. Appellant argues that, when the city, after having. cut off the supply, voluntarily resumed services without compelling the payment of delinquent charges, it waived its right to collect charges made prior to the cut-off.

We are unable to see any merit in this contention. Our attention has not been called to any statute or ordinance which gave the city officials in charge of the water or electric light and power departments any authority to forgive or waive payment of just charges

for the services rendered by the city. If it be conceded that they had that power, there is no good reason to hold that the charges were paid or forgiven by resumption of service.

The acts of respondent city in the instant case are analogous to those of the city officials of Seattle in allowing charges to accumulate over a long period of time without cutting off the supply, as was shown to have occurred in *Moran v. Seattle, supra.* In that case, we stated:

"Respondents finally contend that the city has waived its lien or right by allowing the charges to accumulate and by failing to cut off the water supply at an earlier date. There is nothing in the record to indicate that the city made no effort to collect the water rentals from the tenants of the building, or that its failure to disconnnect the service was due to dilatoriness or carelessness in the conduct of its business, and we can not assume that the city's conduct is to be thus explained. The record shows that, while the tenants did not keep their account paid up in full, from month to month, they did, from time to time, make substantial payments thereon. As we have already intimated, it is at least a reasonable presumption that the city was moved by fair and honest considerations and was doing only that which a private operator might have done under the same circumstances.

"In *McCormacks, Inc. v. Tacoma* [170 Wash. 103, 15 P. (2d) 688], *supra,* it was contended, as it is here, that the city had waived its right of lien, so far as the owner of the property was concerned, but the court decided the point adversely to the owner. A contention similar to that made by respondents here was also advanced in *Loring v. Commissioner of Public Works,* 264 Mass. 460, 163 N. E. 82, and in answer thereto, the court said:

" 'The default of the tenant did not relieve the real estate from the lien which had been imposed by the superior public authority for the preservation of the public health and safety. The fact that the tenant has

become insolvent is the misfortune of the petitioners, but it does not affect the enforcement of a right lawfully established for the public welfare. *Dunbar v. New York*, 251 U. S. 516, 518 [40 S. Ct. 250, 64 L. Ed. 384].

" 'Unreasonable delay in shutting off the water for nonpayment of the water bills is a factor irrelevant to the enforcement of the lien in conformity to the enabling statute. The Legislature has not imposed any such limitation upon the lien. It is not within our province to do so. *Fairbanks v. Mayor & Aldermen of Fitchburg*, 132 Mass. 42, 47, 48.' "

We hold that the fact that respondent had, upon prior occasions, receded from enforcement of its statutory right to stop service, did not constitute an estoppel, and that the city was entitled to have its delinquent charges, accruing prior to June 7, 1933, paid before continuing the supply of water and electrical energy to appellant.

Judgment affirmed.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.